## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MONROE WEEKLEY, III, | ) | |
| | ) | Civil Action No.  2:22-cv-00279 |
| Plaintiff, | ) | |
| | ) | Magistrate Judge Lisa Pupo Lenihan |
| v. | ) | |
| | ) | ECF No. 32 |
| SGT. PROVIDENT, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

### MEMORANDUM AND ORDER ON DEFENDANTS' MOTION TO DISMISS

For the reasons that follow, Defendants' Motion to Dismiss, ECF No. 32, will be denied.

## I.  PROCEDURAL AND FACTUAL HISTORY

Plaintiff, an inmate of the Albion State Correctional Institution ("SCI Albion"), filed his

concisely stated December 9, 2022 Complaint in this civil rights action pursuant to 42 U.S.C. § 1983.

ECF No. 10.  In response to Defendants' Motion to Dismiss and Brief in Support filed March 25,

2023 at ECF Nos. 32 and 33, Plaintiff filed a highly responsive and legally-informed Brief in

Opposition (ECF No. 40).  Plaintiff has both a clear understanding of the legal basis and elements for

the claims of First Amendment retaliation and conspiracy he brings, and an ability to state facts

sufficient to maintain those claims under the appropriate standard on Motion to Dismiss.

Plaintiff attests that the Defendants conspired to and did violate his First Amendment rights

by retaliating against him for his exercise of those rights in the form of a Prison Rape Elimination Act

("PREA") complaint against Defendant Provident.  More specifically, Plaintiff alleges that in

December 2019 he filed a complaint/grievance as a witness to a PREA violation by Defendant

1

Provident. ECF No. 40-1. Approximately one year later, in January 2021, when Provident was the

Supervisor of Plaintiff's Honors housing unit, Defendant Officer Cole (Provident's subordinate)

charged Plaintiff in a meritless Misconduct report (for "refusing to stand for count") which was

ultimately dismissed on review.  Approximately two months later, in March 2021, Defendant Officer

Draper (also Provident's subordinate) charged Plaintiff with another meritless Misconduct (three

charges related to being out of his cell outside of normal time without permission).  ECF Nos. 40-2

and 40-3. Approximately two weeks later, Provident entered Plaintiff's cell and began a verbal

assault which became a verbal altercation.  Plaintiff requested observation of the incident by another

prison official, which Provident refused.  Two nearby Corrections Officers – Wernicki and Abreu -

attempted to intervene and were rebuffed by Provident.  They recommended Plaintiff report the

incident, request preservation of video footage and identify them as witnesses.  That same day Unit

Manager Defendant Frith, with knowledge of the prior events/interactions, removed Plaintiff from the

Honors unit for misconduct, disqualifying him from continued employment in Correctional Industries

("CI").[1]

Plaintiff asserts that the misconduct charges and revocation of his Honors housing and related

prison employment were made in conspiracy with Provident – who exercised his rank and authority

over other Defendants - and in retaliation for Plaintiff's filing of a PREA complaint/grievance.

Plaintiff filed and pursued the appropriate Department of Corrections grievance with regard to the

---

[1] Plaintiff had been employed as a store worker at Correctional Industries.  ECF No. 33-1 at 3 (Plaintiff's
August 2, 2021 Appeal of Grievance).

incident(s), which were denied through the prison appeals process.  *See generally* ECF No. 10 at 1-5; *see also* ECF No. 40 at 1-2, ECF No. 33-1.[2]

Defendants assert that Plaintiff cannot make a showing of adverse action premised on his verbal altercation with Provident or the misconducts issued because Provident "was not involved in" Plaintiff's housing and work removals; "rather these decisions are made" not by "Sgt's and CO1's" [*sic*] but by "unit management", and Unit Manager Firth reported Plaintiff's "multiple negative interactions" and "poor attitude" which "rendered him unsuitable for continued housing on the honor unit."  ECF No. 33 at 5-7.  They further assert that nothing alleged rises to the level of an adverse (vs. *de minimus*) action, *id.* at 7-8, and that Plaintiff has not presented "affirmative evidence" of retaliation (vs. "conclusory allegations"), *id.* at 9-10.[3]

---

[2] The Final Appeal Decision and other grievance proceeding documentation indicate that "[i]t was found that *the unit team* determined that due to your disruptive behavior, you were no longer eligible to remain on the honor block.  Because you were not longer housed on the honor block, you did not meet the eligibility to work in CI."  ECF No. 33-1 at 1 (emphasis added); *id.* at 5 ("Frith reports that your behavior was being monitored from multiple negative interactions [and "poor attitude"] from weeks prior to your move from the unit" and the unit team has discretion over its housing moves).  *Compare id.* at 9 (Plaintiff's Grievance of April 14, 2021 asserting that Provident had been "target[ing]" Plaintiff "in the form of frivolous misconduct reports" which Plaintiff had reported to multiple specifically-named "unit management team" members and "work bosses" (one of whom advised Plaintiff to "keep [his] distance" from Provident)).

The Court notes that the documentation reflects further details of allegations of retaliation, *e.g.*, that Provident expressly threatened to have Plaintiff removed from his housing and employment in response to his PREA filing and that an official with oversight of Inmate Employment later told Plaintiff – orally and in writing - that "[if he] had kept [his] mouth shut [he] wouldn't have been moved" from his housing block or lost his CI position (a possible reference to either the verbal altercation or the PREA complaint).  *Id.* at 3, 13.

The Court further notes that these documents support Plaintiff's assertion that he received no misconducts between 2016 and the Honors Housing Unit informal and formal charges against him beginning in January 2021 and that he more generally maintained above-average housing and work reports and maintained the best Security Level.  They also reflect confirmation by at least one Officer-witness of the April 14, 2021 "incident" with Provident (although Officer Wernicki was – not surprisingly, short of Provident's having confessed it - unable to directly "connect" that incident to Plaintiff's loss of housing and employment).  *Id.* at pp. 5, 7, 11.

[3] Although Defendants' Brief in Support of its Motion does not directly address Plaintiff's claim of conspiracy, it does (questionably) assert that Plaintiff "fails to present a plausible reason why Defendants Cole and Drayer . . . would falsify a misconduct" or Defendant Frith "would remove him from the unit."  ECF No. 33 at 10-11.

## II.  APPLICABLE STANDARD OF REVIEW

The parties have fairly laid out the relevant general legal standards regarding review of *pro se* complaints on motions to dismiss. In general: "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint that merely alleges entitlement to relief, without alleging facts that show entitlement, must be dismissed. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). But this "'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary elements." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). "Factual allegations must be enough to raise a right to relief above the speculative level" and be "sufficient to state a claim for relief that is plausible on its face." *Twombly*, 550 U.S. at 555. Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

Furthermore, when considering *pro se* pleadings, a court must employ less stringent standards than when judging the work product of an attorney, construe the complaint liberally and draw fair inferences from what is not alleged as well as from what is alleged. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003). In a § 1983 action, the court must "apply the applicable law, irrespective of whether the *pro se* litigant has mentioned it by name." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002).

---

It also misreads the Complaint as intending a claim of restricted access to or a failure to address a grievance. *Id*. at 12-13. *Cf. id*. at 13 n. 4 (correctly concluding that the claim is properly addressed as a First Amendment retaliation claim).

As the parties correctly note, a court may consider additional materials such as exhibits attached to the complaint and indisputably authentic documents when adjudicating a motion to dismiss under Rule 12(b)(6).  *See Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994); *Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004); *Golden v. Cook*, 293 F. Supp.2d 546, 551 (W.D. Pa. 2003); *see also* ECf No. 33 at 5-6, n. 2.

## II. ANALYSIS

As a threshold matter, to establish a Section 1983 claim, a plaintiff must show a deprivation of a right secured by the Constitution and the laws of the United States by a person acting under color of state law.  Defendants do not dispute that they were acting under color of law with regard to the matters alleged.

### **Plaintiff States a Claim for First Amendment Retaliation**

As to the First Amendment retaliation claim, Plaintiff must allege (1) that he engaged in constitutionally protected conduct, (2) suffered an adverse action by prison officials, and (3) "a causal link between the exercise of his constitutional rights and the adverse actions taken against him." *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001) (citing *Allah v. Seiverling*, 229 F.3d 220, 225 (3d Cir. 2000)); *Mt. Healthy City Bd. of Educ. v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977).[4]  If Plaintiff makes this initial showing, "the burden then shifts to the prison official to prove that the same decision would have been made absent the protected conduct for reasons related to a legitimate penological interest." *DeFranco v. Wolfe*, 387 F. App'x 147, 154-55 (3d Cir. 2010) (citing *Rauser*, 241 F.3d at 334).

---

[4] *See also Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2016) (cited in ECF No. 40 at 4).

Defendants must concede that Plaintiff's right to file a prison complaint or grievance is protected by the First Amendment. *See e.g.*, *Robinson v. Taylor*, 204 F. App'x 155, 157 (3d Cir. 2006); *Harris v. Terhune*, 2002 U.S.App. LEXIS 6795, at *4 (3d Cir. Apr. 11, 2002). Further, if true and shown to be causally related, Plaintiff's (1) loss of his Honors housing and assignment to another housing unit and (2) related loss of sought-after prison employment/income (and perhaps also (3) his harassment for fabricated or trumped-up allegations of misconduct and "negative attitude")[5] as a result of filing a PREA complaint, may be construed as adverse actions sufficient to deter a reasonable person from exercising his constitutional rights.[6]

Plaintiff also sufficiently pleads a causal connection between his conduct and the adverse actions identified. He asserts both evidence of temporal proximity between his PREA complaint/grievance and the ensuing series of adverse actions against him, and of intervening antagonism (*e.g.*, meritless accusations/harassment for bad attitude and meritless misconduct charges,

---

[5] *See* ECF No. 33 at 6-7 (recounting that "unit management" was "monitor[ing Plaintiff's] behavior" for "negative interactions" and he was "warned several times that [he] would be moved if [his] poor attitude persisted").

[6] Although inmates may not have a constitutional right to be housed in a particular place of their choosing, "[g]overnment actions, which standing alone do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right." *Allah*, 229F.3d at 224-25; *Sims v. Piazza*, 462 F. App'x 228, 233 (3d Cir. 2012). *Cf.* ECF No. 33 at 7-8 (acknowledging that "a disadvantageous change in housing" may constitute adverse action, but analogizing to a case in which an inmate's reassignment had "only *de minimus* consequences"); *id.* at 8 (questionably asserting that Plaintiff "failed to plead any facts to suggest that his reassignment was detrimental, vindictive or otherwise unpleasant").

The Court rejects Defendants' factual and legal assertions that Plaintiff's CI employment loss was so temporary an inconvenience that it does not plausibly qualify as an adverse action. The Court notes the documents under appropriate consideration, such as Defendants' ECF No. 33-1, and the procedural posture of this case.  *Cf.* ECF No. 33 at 8.

*See also Mitchell v. Horn*, 318, F.3d 523, 530 (3d Cir. 2003) (holding prisoner's allegation that he was falsely charged with misconduct in retaliation for filing a complaint against prison officer stated a First Amendment retaliation claim).

Provident's conflict-seeking verbal abuse and ongoing antagonism).  ECF No. 40 at 6-7 (citing *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271 (3d Cir. 2000) for evidence of causal connection).[7]

Thus, Plaintiff has alleged more than sufficient facts to state a plausible First Amendment retaliation claim.

### Plaintiff States a Claim for Conspiracy

To support a claim for conspiracy under Section 1983, Plaintiff must show "(1) the existence of a conspiracy involving state action and (2) deprivation of civil rights in furtherance of such conspiracy by each party to the conspiracy." *Marchese v. Umstead*, 110 F.Supp.2d 361, 370 (E.D.Pa.2000). With respect to the first prong, "[t]o sufficiently allege a conspiracy, a plaintiff must show a combination of two or more persons to do a criminal act, or to do a lawful act by unlawful means or for an unlawful purpose." *Panayotides v. Rabenold*, 35 F.Supp.2d 411, 419 (E.D.Pa.1999). In addition, liability for a conspiracy to violate Section 1983 requires an actual violation of the law (mere intent does not suffice). *Holt Cargo Sys., Inc. v. Delaware River Port Auth.*, 20 F.Supp.2d 803, 843 (E.D.Pa. 1998).   Plaintiff's Complaint has stated facts sufficient to support a claim at this juncture for the deprivation of his constitutional rights and has pleaded facts to place the Defendants on notice of the time frame of the alleged conspiracy and actions by each Defendant in its furtherance. *See e.g. Buxton v. Wetzel,* 2022 WL 3357880, at *5 (W.D. Pa. Aug. 15, 2022) (plaintiff was entitled to discovery on conduct of officer defendants allegedly conspiring in retaliation for filing grievances, including as to misconduct proceedings).

---

[7] As Plaintiff correctly notes, evidence of "inconsistent reasons" for adverse action may also support a finding of causal connection/retaliatory motive.  *Id.* at 7.  *See also* ECF No. 33-1 at 8 (Initial [Grievance] Review Response) (stating that "[i]nmate moves . . . are not disciplinary . . . but are a means of balancing the [facility] population" and that job loss "is a common occurrence because of job availability" in denying Plaintiff's grievance).

### III.    CONCLUSION

In sum, Plaintiff has more than met the liberal pleading standard for *pro se* inmate litigants. *See, e.g.*, *Hughes v. Smith*, 2005 WL 435226, at *5 (E.D. Pa. Feb. 24, 2005). Certainly, going forward, Plaintiff will be required to offer additional evidence in support of his allegations and to establish the individual and concerted participation of Defendants in causing him retaliatory harm. At this stage of the litigation, however, Plaintiff has alleged facts which, taken as true, show that he is entitled to relief for Defendants' alleged violation of his First Amendment rights, as well as for the alleged conspiracy to violate those rights.

The Court therefore enters the following:

### IV.  ORDER

Defendants' Motion to Dismiss, ECF No. 32, is **DENIED.**

**IT IS SO ORDERED.**

September 12, 2023

_____
Lisa Pupo Lenihan
United States Magistrate Judge

cc:  Monroe Weekley, III
     KS9184
     SCI Albion
     10745 Route 18
     Albion, PA 16475

     Counsel of record